FILED
04 JUL 22 PM 3:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| BARRY W. TUCKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: CV-01-P-2038-S |
| ) | |
| THE HOUSING AUTHORITY OF ) | **ENTERED** |
| THE BIRMINGHAM DISTRICT and ) | **JUL 2 2 2004** |
| NAOMI H. TRUMAN, individually, ) | |
| ) | |
| Defendant. | |

## MEMORANDUM OPINION

The court has before it Defendant Naomi Truman's ("Truman") and Defendant The Housing Authority of the Birmingham District's ("HABD") Motions for Summary Judgment (Docs. # 70, 96) filed August 1, 2003 and February 18, 2004 respectively, and Defendant Truman's Motion to Strike Plaintiff's Evidentiary Submission (Doc. # 118) filed March 24, 2004.[1] The motions have been fully briefed[2] and, pursuant to the court's December 19, 2003 order (Doc. # 82), the motions for summary

---

[1] Defendant Truman's initial motion for summary judgment (Doc. # 50), was deemed submitted on December 6, 2002 by the court's November 18, 2002 order (Doc. # 51). The court then granted Plaintiff's Motion to Continue Ruling Pending Discovery (Docs. # 54,53), on December 16, 2002, deferring Defendant Truman's motion. Defendant HABD first submitted its motion for summary judgment (Doc. # 67), and supporting submissions (Doc. # 68, 69), on July 31, 2003. Defendant Truman submitted a Renewed and Substituted Motion for Summary Judgment (Doc. # 70), and supporting submissions (Doc. # 71, 72), on August 1, 2003. Following reassignment of the case to this court on October 1, 2003, (Doc. # 76), this court ordered Defendants to resubmit the previously filed summary judgment submissions in accordance with Exhibit A and to supplement the motions, as needed, with appropriate evidence from the recent depositions of Fagan and Rosenbaum (Doc. # 82). The resubmitted, supplemented motions are now before the court.

[2] Defendant HABD filed a memorandum of law in support of its motion (Doc. # 97), and evidentiary submission (Doc. # 98). Defendant Truman filed a memorandum of law in support of her motion (Doc. # 108), and evidentiary submission. (Doc. # 109). Plaintiff submitted a brief in opposition to Defendant HABD's motion (Doc. # 112), another in opposition to Defendant Truman's motion (Doc. # 114), and evidentiary submission (Doc. # 113). Defendants HABD and Truman



judgment were deemed submitted, without oral argument, on March 24, 2004.

Plaintiff Barry Tucker ("Tucker") commenced this action on August 13, 2001 by filing a complaint in this court against HABD and several of its employees. (Doc. # 1). Tucker amended his complaint on March 4, 2002 to allege claims against only HABD and Truman.[3] (Doc. # 18). Tucker maintains that HABD and Truman, as state actors, denied him equal protection of his Fourteenth Amendment rights as secured by § 1983 and that HABD violated Title VII. (Doc. # 18).[4] Specifically, Plaintiff claims that Defendants: (1) discriminated against him on the basis of his race (white) and gender (male) in the terms and conditions of his employment and specifically by terminating him, and (2) retaliated against him by not selecting him for a vacant position. (Doc. # 18, Count One). Defendants' motions for summary judgment assert that no genuine issue of material fact exists and that Defendants are entitled to judgment as a matter of law. (Docs. # 70, 96).

---

subsequently filed reply briefs (Docs. # 117, 119), and Defendant Truman filed a motion to strike Plaintiff's evidentiary submission. (Doc. # 118).

[3] While Plaintiff's initial complaint (Doc. # 1) named HABD and several of its employees as defendants, the amended complaint realleges claims only against HABD. (Doc. # 18). Truman was added as a defendant in the amended complaint. (*Id.*). After the amended complaint was filed, this court granted a partial motion to dismiss filed by the defendants not renamed in the amended complaint (Doc. # 21) because Plaintiff did not oppose the motion and did not reallege claims against them. (Doc. # 43).

[4] Although Plaintiff's amended complaint also mentions 42 U.S.C. §1981 as a basis for jurisdiction, he fails to assert any specific claims under § 1981 and Plaintiff's summary judgment opposition makes no mention of § 1981. (Doc. # 18, Doc. # 114). Nevertheless, even assuming § 1981 is a basis for relief in this case, it is merely duplicative of the claims already asserted. *See Standard v. A.B.E.L. Servs. Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (holding that Title VII and § 1981 have the same requirements of proof and use the same analytical framework); *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989) (finding that § 1983 provides the exclusive remedy for obtaining relief for vindication of rights secured by § 1981 against a state actor). Additionally, Plaintiff's summary judgment opposition concedes his claims for hostile work environment and violations of his substantive and procedural due process rights, (*Compare* Doc. # 18 *with* Doc. # 114, at 2, 16). The court will not consider these claims on summary judgment.

2

As explained below, the motions are due to be denied because certain disputed issues of material fact preclude summary judgment on those claims. The court also finds that Defendant Truman's Motion to Strike is due to be granted.

## I. Legal Standards for Evaluating a Summary Judgment Motion

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R .Civ. P. 56(c). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000); *St. Mary's Honor Center v. Hicks*, 113 S. Ct. 2742, 2747-48 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984). Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case, *McDonnell Douglas Corp. v. Green*, 93 S. Ct. 1817 (1973); *Texas Dept. of Community Affairs v. Burdine*, 101 S. Ct. 1089 (1981), as modified by *Desert Palace v. Costa*, 123 S. Ct. 2148 (2003), that allocation scheme applies only in cases where there is no direct evidence of discrimination, *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination. Second, once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate,

nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must *either* prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though defendant's legitimate reason may also be true or have played some role in the decision. *McDonnell Douglas*, 93 S. Ct. at 1824-25; *Burdine*, 101 S. Ct. at 1093-94; *Desert Palace*, 123 S. Ct. at 2154-55. The court is aware that the summary judgment rule applies in job discrimination cases just as in other cases. *Chapman v. AI Transport*, 229 F.3d 1012, 1025 (11th Cir. 2000) (rejecting an earlier, contrary general rule and emphasizing that no thumb is to be placed on either side of the scale).

## II.    Relevant Undisputed Facts[5]

HABD is a public corporation that administers "low-income public housing" in the City of Birmingham. (Doc. # 97, at vii; Doc. # 114, at vi). Plaintiff was hired as an Assistant General Counsel for HABD on August 3, 1998 (Doc. # 97, at ix; Doc. # 108, at 2; Doc. # 114, at vi), after interviewing with Defendant Truman, General Counsel for HABD and a black female, and Ralph Ruggs, the Executive Director of HABD and a black male. (*Id.*; Doc. # 98, HABD Ex. A, Tucker depo., at 73-77). Defendant Truman supervised the entire legal department in addition to serving as Plaintiff's immediate supervisor. (Doc. # 114, at vi, vii). Truman reported to Ruggs. (*Id.*). At the time of Plaintiff's hiring, the legal department consisted of Truman; Faye Rosenbaum, also an Assistant General Counsel and a white female; and two assistants who were both black females. (Doc. # 108, at 3; Doc. # 114, at vi, vii).

---

[5] If facts are in dispute, they are stated in the manner most favorable to the Plaintiff. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

As part of the proposed 2000-2001 budget for the legal department, Truman recommended to Ruggs that HABD reorganize the legal department by eliminating one of the Assistant General Counsel positions and replacing it with two paralegal positions. (*Id.*; Doc. # 108, at 8). The reorganization was approved by the Board of Commissioners. (*Id.*).

The employee handbook required that seniority would determine which of the two Assistant General Counsel positions should be eliminated. (Doc. # 108, at 9). Plaintiff was the attorney with the least seniority in the legal department and was the only HABD employee affected by the reorganization. (Doc. # 114, at xii, xv).

Accordingly, on June 1, 2000, HABD notified Plaintiff by letter that it was reorganizing the legal department and eliminating the Assistant General Counsel position that he occupied. (Doc. # 98, HABD Ex. F). The letter stated that, "should [he] have an interest in other positions within the [HABD]," he could apply for positions for which he was qualified.[6] (*Id.*). Plaintiff was discharged on June 23, 2000 (Doc. # 97, at xvii),[7] and his eliminated position was replaced by two paralegal positions. (Doc. # 97, at xvii). Two new paralegals were hired to work in the legal department: Eddie Rox, a black male, and Valerie Fagan, a black female. (Doc. # 114, at xviii; Doc. # 108, at 9). Neither

---

[6] Plaintiff argues that he was not "offered" another position at HABD (Doc. # 114, at xii-xiii), and that it is HABD's policy that any employee laid off "may displace any other less senior employee" if he meets the qualifications for that position and the position is "at or below the grade or step level of the employee receiving notice." (Doc. # 113, P Ex. B, HABD depo, Ex. 2, at 10 (Human Resources Policy Manual, 4.8.2)). On the contrary, the last sentence of 4.8.2 states: "The employee receiving notice of layoff shall notify the Department of Human Resources within seventy-two (72) hours of receiving such notice of the intention or desire to continue in employment." (*Id.*). HABD policy was not to *offer* discharged employees the positions occupied by other employees; rather, HABD invited Plaintiff to apply for another position.

[7] Although it appears that Plaintiff had a problem with absenteeism, Defendants concede that Plaintiff was not terminated for poor job performance and that he left in good standing. (Doc. # 114, at xiii).

paralegal was a licensed attorney. (Doc. # 108, at 10).

Plaintiff filed an EEOC charge of discrimination on November 28, 2000. (Doc. # 114, at xv; Doc. # 97, at xx). Plaintiff filed this lawsuit on August 13, 2001. (Doc. #1).

In December 2001, Rosenbaum resigned from her Assistant General Counsel position at HABD. (Doc. # 97, at xix; Doc. # 108, at 10). After Rosenbaum's resignation, HABD hired two temporary attorneys (a white male and a black female). Truman then requested that Ruggs allow the hiring of a permanent employee to fill the vacant position. (Doc. # 108, at 10; Doc. # 113, P. Ex. B, HABD depo., at 143). Plaintiff applied, and was interviewed for the position. (Doc. # 97, at xix). After interviewing Plaintiff and several other applicants, HABD determined that the legal department's needs were adequately met using temporary contract attorneys, and informed the applicants that it had decided not to fill the position. (Doc. # 114, at xvi).

In the 2002-03 proposed budget for the legal department, Defendant Truman recommended the creation of a senior Assistant Counsel position, an administrative position. (Doc. # 114, at xvii). Her recommendation was not approved. (Doc. # 114, at xvii).

### III. Plaintiff's Disparate Treatment Claims under § 1983 and Title VII

In this case, Plaintiff has levied allegations of disparate treatment in termination and the terms and conditions of employment under both Title VII (against HABD alone) and § 1983 (against both HABD and Truman). Although Plaintiff premises his § 1983 claim on the Fourteenth Amendment right to equal protection, "[i]n a case such as this alleging disparate treatment, in which § 1983 is employed as a remedy for the same conduct attacked under Title VII, the elements of the two causes of action are the same." *Richardson v. Leeds Police Dept.*, 71 F.3d 801, 805 (11th Cir. 1995) (finding that analysis of equal protection claim under § 1983 used *McDonnell Douglas* burden-shifting of Title VII disparate

6

treatment). Accordingly, the court will utilize the same analysis for the Plaintiff's Title VII and § 1983 claims.

Plaintiff has alleged that he was discriminated against with respect to access to the building and computers, time cards, discipline for returning late from lunch, leave requests, and termination. (Docs. # 18, 112, 114). As a general rule, in order to establish a *prima facie* case of disparate treatment on the basis of race or gender, Plaintiff must show: (1) he is a member of a protected class; (2) he suffered an adverse job action; (3) his employer treated similarly-situated employees outside his protected classification more favorably, or in the case of termination, that he was replaced by someone outside the protected class; and (4) he was qualified to do the job. *See McDonnell Douglas Corp. v. Green*, 411 U.S. at 802.

Because Plaintiff's position was eliminated,[8] however, the *prima facie* case for Plaintiff's termination claim is "a variant of the *McDonnell Douglas* test applicable to reduction-in-force cases" whereby Plaintiff must show (1) that he is in a protected class and was adversely affected by an employment decision; (2) that he was qualified for his current position or to assume another position at the time of discharge; and (3) evidence by which a fact finder might reasonably conclude that the employer intended to discriminate on the basis of race or sex in reaching the decision at issue. *Earley v. Champion International Corp.*, 907 F.2d 1077, 1082 (11th Cir. 1990). If a position is entirely eliminated in a reduction in force ("RIF") for nondiscriminatory reasons, "for plaintiff to prevail against his employer he must show that he was qualified for another available job with that employer;

---

[8] Defendants argue, and the undisputed evidence shows, that Plaintiff was terminated when his Assistant General Counsel position was eliminated as part of the reorganization of HABD's legal department. "Where a position is eliminated, the case is similar to a reduction-in-force case." *Mitchell v. Worldwide Underwriters Ins. Co.*, 967 F.2d 565, 567-68 (11th Cir. 1992).

qualification for his current position is not enough." *Earley*, 907 F.2d at 1083.

When all factual disputes and justifiable inferences are resolved in favor of Plaintiff, the court finds that Plaintiff has adduced sufficient evidence on his disparate treatment Title VII and § 1983 claims to create questions of fact for the jury, including whether HABD argued to the EEOC that it saved money in eliminating Plaintiff's position, whether the reorganization was financially beneficial as HABD asserts, what circumstances surrounded the hiring of replacement help – and effective rejection of Plaintiff's application – when Rosenbaum resigned, whether Defendants knew that Tucker would be targeted by the reorganization and adopted their RIF criteria to terminate him, and whether Truman discriminatorily docked Plaintiff's pay when he returned late from lunch while treating Rosenbaum more favorably by allowing her to use vacation time when she committed the same offense. Additionally there is sufficient evidence in the record to question the veracity of Defendants' articulated reasons such that a reasonable jury could infer "that the reasons given by the employer were not the real reasons for the adverse employment decision," *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997), and/or that discrimination was a "motivating factor" for the employment action, even though Defendants' legitimate reason may also be true or have played some role in the decision. *Desert Palace*, 123 S. Ct. at 2154-55. Therefore, the court finds that summary judgment is due to be denied on these claims.

## IV. Plaintiff's Retaliation Claims[9]

Plaintiff also claims that HABD's decisions to terminate him and not to rehire him were in retaliation for his filing verbal and written complaints of race and gender discrimination. (Doc. # 18). To establish a *prima facie* case of retaliation under Title VII, Plaintiff must prove (1) he participated

---

[9] Plaintiff alleges retaliation against Defendant HABD only.

in an activity protected by Title VII; (2) he suffered an adverse personnel action; and (3) there is a causal link between the protected activity and the adverse employment action. *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1457 (11th Cir. 1998).

Plaintiff has demonstrated that there are genuine issues of material fact that preclude summary judgment on these claims. Plaintiff offers evidence from which a reasonable jury could conclude that his termination was causally connected to written grievances and verbal complaints made to Truman regarding disparate application of work rules. (*See* Doc. # 112, at 18-19 and evidence cited therein). With the exception of one desultory, conclusory statement that "[i]t is undisputed that the grievance was not protected activity," HABD fails to assert any argument that Plaintiff's termination was not retaliatory. (*See* Doc. # 117, at 6). This is not sufficient to demonstrate that HABD is entitled to judgment as a matter of law on this claim.

With respect to the decision not to rehire Plaintiff, the evidence demonstrates that Plaintiff had the necessary experience for the new position, left HABD on good terms, and received satisfactory reviews while employed there. Nonetheless, HABD decided not to rehire Plaintiff mere months after he filed his complaint in this court.[10]   Suffice it to say that the evidence is sufficient to prevent summary judgment on this claim as well. For example, although HABD claims that it decided, separate and apart from Plaintiff's lawsuit, not to fill the position for which Plaintiff applied, there is no dispute that HABD inexplicably filed a motion in this case requesting the court to direct Plaintiff to withdraw his application for rehire on the grounds that Plaintiff's application for an open position during the

---

[10] HABD focuses on the 17-month lapse of time between the filing of Plaintiff's EEOC charge and the decision not to rehire him. (Doc. # 117). HABD fails to acknowledge, however, that Plaintiff filed his complaint in this court in August 2001 just prior to the December 2001 decision not to rehire him.

pendency of his lawsuit "usurped" the function of the court. (Doc. # 21). The trier-of-fact must determine whether this and other conduct of HABD establish a retaliation claim.

V.     **Defendant Truman's Qualified Immunity Defense**

Defendant Truman has raised the defense of qualified immunity in this case. Qualified immunity utilizes an "objective reasonableness standard, giving a government agent the benefit of the doubt unless her actions were so obviously illegal in the light of then-existing law that only an official who was incompetent or who knowingly was violating the law would have committed them." *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1366 (11th Cir. 1998). The Eleventh Circuit has cautioned that, "[b]ecause qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity." *Lassiter v. Alabama A & M University, Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir.1994).

Under the qualified immunity doctrine, government officials performing discretionary functions are immune from suit unless the alleged conduct violates "clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982).[11] "Clearly established" rights must be "developed [] in a concrete factual context so as to make it obvious to a reasonable government actor that his actions violate federal law." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Only Supreme Court, Eleventh Circuit, and Alabama Supreme Court cases can "clearly establish" the law in this Circuit. *Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003).

---

[11] There is no dispute that Truman was exercising her discretionary function when she recommended to Ruggs that Plaintiff's Assistant General Counsel position be eliminated.

Thus, to overcome the defense of qualified immunity in this case, Plaintiff must demonstrate that (1) Truman's treatment of Plaintiff violated the Constitution, and (2) facts surrounding the alleged violations are "materially similar" to the facts of a preexisting case rendered by the Supreme Court, Eleventh Circuit, or Alabama Supreme Court such that the alleged violation in this case was "clearly established" as a constitutional violation at the time of the incident. *Marsh v. Butler County, Alabama*, 268 F.3d 1014, 1032-1033 (11th Cir. 2001). "Because fair and clear notice to government officials is the cornerstone of qualified immunity, courts must diligently analyze the preexisting case law to determine whether it really did provide plain notice to every reasonable government official that the pertinent conduct, in the specific circumstances, would clearly violate preexisting federal law." *Marsh*, 268 F.3d at 1031.

As the court outlined above, there are genuine issues of material fact that a jury must decide regarding whether Defendant Truman intentionally discriminated against Plaintiff. At the time of the decisions in question, the law prohibiting intentional discrimination was clearly established, and there is no danger that Truman, a reasonable public official, would have been without notice of these prohibitions. *E.g., Smith v. Lomax*, 45 F.3d 402, 407 (11th Cir. 1995); *Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1064 (11th Cir. 1992); *Lambert v. Fulton County, Ga.*, 253 F.3d 588, 596-97 (11th Cir. 2001) ("there can be no doubt that at the time of the operative facts in this case, it was clearly established by binding precedent in this circuit that intentional discrimination by a state actor in the workplace on account of race violated the Fourteenth Amendment."); *Williams v. Consolidated City of Jacksonville*, 341 F.3d 1261, 1271 (11th Cir. 2003) (noting that *Yeldell* and *Brown v. City of Fort Lauderdale*, 923 F.2d 1474 (11th Cir. 1991), are established precedent for the proposition that it is a violation of the equal protection clause to terminate an employee on the basis of race or gender).

Therefore, as there are factual issues which must be determined by a jury, Truman is not entitled to a defense of qualified immunity with respect to Plaintiff's allegations of discrimination regarding his employment at HABD.

## VI. Defendant's Motion to Strike

The court finds that Defendant Truman's Motion to Strike (Doc. # 118) is due to be granted and the three statements that Defendant identifies as inadmissible hearsay are due to be stricken. Nonetheless, even without consideration of these statements as part of the summary judgment record, the court finds that Plaintiff has adduced sufficient evidence to demonstrate a disputed issue of fact as to his claims against her.

## VII. Conclusion

For the reasons stated above, Defendant Truman's motion to strike (Doc. # 118) is due to be granted and Defendants' motions for summary judgment are due to be denied. (Docs. # 70, 96). A separate order will be entered.

**DONE** and **ORDERED** this 22rd day of July, 2004.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE