FILED

2005 Sep-28  PM 01:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **BARRY W. TUCKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:01-CV-2038-RDP** |
| | ) | |
| **THE HOUSING AUTHORITY OF** | ) | |
| **THE BIRMINGHAM DISTRICT and** | ) | |
| **NAOMI H. TRUMAN, individually,** | ) | |
| | ) | |
| **Defendant.** | | |

## MEMORANDUM OPINION

The court has before it Defendant Naomi Truman's ("Truman") and Defendant the Housing Authority of the Birmingham District's ("HABD") Motions for Summary Judgment. (Docs. # 150, 151).[1]  The motions have been fully briefed and were deemed submitted, without oral argument, on September 19, 2005.  (Doc. # 149).   For the reasons outlined below, the court finds that Truman's motion for summary judgment is due to be granted and HABD's motion for summary judgment is due to be denied.

### I.      Procedural History

Plaintiff Barry Tucker commenced this action on August 13, 2001 by filing a complaint in this court against HABD and several of its employees. (Doc. #1).  Tucker later amended his complaint to allege claims against only HABD and Truman – Fourteenth Amendment equal protection claims (asserted under § 1983) against both Defendants and Title VII claims against HABD alone.  (Doc. # 18). Specifically, Plaintiff claimed that: (1) HABD discriminated against him on the basis of his race (White)

---

[1] Defendant HABD filed a "Notice of Intent to Adopt Dispositive Motion of Moving Party," noting that "[t]here are similarity of issues between the plaintiff's claims against Ms. Truman and the claims against HABD."  (Doc. # 151).

and gender (male) in the terms and conditions of his employment and by terminating him (Doc. # 18 Count One); (2) HABD retaliated against him by not selecting him for a vacant position (Doc. # 18, Count Two); and (3) HABD and Truman, by engaging in the conduct described in Counts One and Two, denied him due process of law and the equal protection of those laws in violation of the Fourteenth Amendment (Doc. # 18, Count Three).

Defendants both filed motions for summary judgment, and Defendant Truman asserted the defense of qualified immunity. (Docs. # 70, 96). In his response to Defendants' motions for summary judgment, Plaintiff abandoned his § 1983 claims against HABD and his due process claims against both Defendants.[2] (Docs. # 112, 138, 141). By order dated July 22, 2004, the court found that certain disputed issues of material fact precluded summary judgment on Plaintiff's remaining claims, and therefore the court denied both Defendants' motions for summary judgment. (Doc. # 124). The court also found that Defendant Truman was not entitled to the defense of qualified immunity. (Doc. # 124).

Defendant Truman filed an interlocutory appeal of the court's summary judgment ruling, specifically challenging the court's determination that qualified immunity did not apply to Plaintiff's claims against her. (Doc. # 125). HABD did not file any briefs on appeal (Doc. # 141), and the Eleventh Circuit noted that this court's disposition of HABD's motion for summary judgment was not before it. (Doc. # 133).

_____

[2] The court notes that Plaintiff could only have asserted procedural due process claims in this case because the Eleventh Circuit has made clear that there is no viable claim for a violation of substantive due process in the employment context. *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir.1994) ("[A]reas in which substantive rights are created only by state law [as is the case with tort law and employment law] are not subject to substantive due process protection under the Due Process Clause because 'substantive due process rights are created only by the Constitution.'"); *Bussinger v. City of New Smyrna Beach, Fla.*, 50 F.3d 922, 925 (11th Cir. 1995) ("*McKinney* held that an employee with a protected interest in his job may not maintain a substantive due process claim arising out of his termination.").

Ruling on Truman's appeal, the Eleventh Circuit found that the First Amended Complaint was a "shotgun pleading," vacated this court's order denying Truman summary judgment, and remanded the case so that Plaintiff could replead Count Three to allege "precisely what it is that Truman did to deny Tucker due process of law and the equal protection of the law."[3]  (Doc. # 133).  The Eleventh Circuit also instructed this court to "comb the record to eliminate any material issues of fact, and . . . decide whether Truman's conduct denied Tucker any rights clearly established by Supreme Court or Eleventh Circuit precedent."  (Doc. # 133).

On remand, this court ordered Plaintiff to file an amended complaint and issued a scheduling order requiring summary judgment submissions by July 22, 2005. (Docs. # 144, 149).   Plaintiff's Restated Complaint alleges the following: (1) HABD intentionally discriminated against Plaintiff because of his race and gender by subjecting him to different terms and conditions and by terminating him; (2) HABD retaliated against Plaintiff by not selecting him for an Assistant General Counsel vacancy; and (3) Truman, while acting under color of state law, intentionally discriminated against Plaintiff on the basis of his race, gender, and in retaliation for protected activity in violation of Plaintiff's constitutional rights under the Equal Protection Clause of the Fourteenth Amendment (as secured by § 1983).  (Doc. # 145).

Truman filed a second motion for summary judgment addressing the merits of Plaintiff's claims and asserting again the defense of qualified immunity.  (Doc. # 150).  HABD filed a "Notice of Intent

---

[3] Perhaps this court's previous order was not as clear as it should have been, but Plaintiff's due process claims were conceded, waived, and abandoned at the summary judgment stage.  (Doc. # 123,  pg. 2, n.4; *see also* Doc. # 138).  This point was apparently lost on the Eleventh Circuit panel that reviewed this case on Truman's interlocutory appeal.  In any event, the only Count Three claims for Plaintiff to replead were his equal protection claims.

to Adopt Dispositive Motion of Moving Party," noting that "[t]here are similarity of issues between the plaintiff's claims against Ms. Truman and the claims against HABD." (Doc. # 151).

## II. ____Legal Standards for Evaluating a Summary Judgment Motion

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R .Civ. P. 56(c). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509-12 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984). Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), as modified by *Desert Palace v. Costa*, 123 S. Ct. 2148 (2003), that allocation scheme applies only in cases where there is no direct evidence of discrimination, *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination. Second, once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the

plaintiff must *either* prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though defendant's legitimate reason may also be true or have played some role in the decision. *McDonnell Douglas*, 411 U.S. at 802-05; *Burdine*, 450 U.S. at 252-54; *Desert Palace*, 539 U.S. at 101-02.  The Court is aware that the summary judgment rule applies in job discrimination cases just as in other cases. *Chapman v. AI Transport*, 229 F.3d 1012, 1025 (11th Cir. 2000) (rejecting an earlier, contrary general rule and emphasizing that no thumb is to be placed on either side of the scale).

## III.   Relevant Undisputed Facts[4]

HABD is a public corporation that administers low-income public housing in the City of Birmingham. (Doc. # 97, at vii; Doc. # 114, at vi).  Plaintiff was hired as an Assistant General Counsel for HABD on August 3, 1998, after interviewing with Defendant Truman, General Counsel for HABD and an African-American female, and Ralph Ruggs, the Executive Director of HABD and an African-American male. (HABD Dep. at 9, 197-99; Plaintiff Dep. at 74-77).[5]  Defendant Truman supervised the entire Legal Department and served as Plaintiff's immediate supervisor.  (HABD Dep. at 9, 199).  Truman reported to Ruggs.  (HABD Dep. at 9, 199).  At the time of Plaintiff's hiring, the Legal Department consisted of Truman; Faye Rosenbaum, also an Assistant General Counsel and a White female; and two assistants (Secretary Faye Sawyer and Executive Secretary/Administrative Assistant

---

[4] If facts are in dispute, they are stated in the manner most favorable to Plaintiff.  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  The court has also noted when facts are in dispute.

[5] The Office of General Counsel or the Legal Department, of which Plaintiff was an employee, is separate from the Executive Department or Executive Office where Ruggs worked. (HABD Dep. at 35-39).

Donna Griffin) who were both African-American females. (HABD Dep. at at 197-99). Patricia Carter, an African-American female, was Director of Human Resources during the relevant time period. (HABD Dep. at 7).

### A.      HABD's Leave Procedures

Truman was responsible for enforcing HABD's policies within her department, and she distributed several memoranda to her staff outlining absence and leave policies. (HABD Dep. at 20-21; Plaintiff Dep. at Exs. 5-8). After Plaintiff began working for HABD, it implemented a mechanized "clock in/clock out" time-keeping system called "Time Tracker." (Plaintiff Dep. at 161-162). Truman regularly asked her Executive Secretary, Griffin, to pull Time Tracker records on her employees. (Griffin Dep. at  64). Plaintiff was not allowed to review the data registered by the Time Tracker system. (Plaintiff Dep. at 397- 402).

In addition to Time Tracker, all Legal Department employees were required to submit written time cards, which were approved by Truman before they were submitted to the payroll department for payment. (Plaintiff Dep. at 287-288; HABD Dep. at 20). Leave cards also were submitted for approval to Truman, and approved leave forms were attached to the time cards submitted to payroll.  (Plaintiff Dep. at 163-164; HABD Dep. at 21-22). If Truman was not in the office, she would designate someone else to be "in charge" of approving or disapproving leave requests in her absence. (HABD Dep. at 25-26).

Although Plaintiff's job performance was satisfactory, he frequently was tardy and absent. (HABD Dep. at 206-07; Griffin Dep. at 84-85).[6]  As Plaintiff's supervisor, Truman counseled him

---

[6] Ironically, even though Plaintiff was the least senior employee in the Legal Department, he was approved for more leave than any other person in his department – he took 160 hours of time off from work during his first year of employment with HABD, including 96 hours off during his

regarding his tardiness problem.  (HABD Dep. at  213-214).  In addition to Plaintiff, Truman also disciplined Rosenbaum (White female), Sawyer (African-American female), Griffin (African-American female), and Rhonda Keith (African-American female) for time card, absence, or leave issues.  (HABD Dep. at 250-51, 280-83; Carter Dep. at 101-03).[7]

### B.     Leave Dispute Regarding Sick Leave July 1-2, 1999

On July 1 and 2, 1999, Plaintiff called in to report that he needed to take leave because of a sick child. (Plaintiff Dep. at 415-417, Ex. 6).  Although he asked to speak to Truman, her Executive Secretary Griffin told him not to worry, that she would "take care of it." (Plaintiff Dep. at 415-417, Ex. 6). Plaintiff thought that it was acceptable to call in and report issues of illness to Griffin.  (Plaintiff Dep. at 415-417, Ex. 6).

Later, Plaintiff submitted his sick leave request form for Truman's approval (Plaintiff Dep. at 415-417), but she did not approve his request because she had not been in the office during the days he was out and therefore the designated "in charge" person was responsible for approving leave for those days.  (Plaintiff Dep. at 171, 415-420; Carter Dep. at 67-69).  Ruggs was the designated charge person on July 1, 1999, and Len Williams, Deputy Executive Director, was the charge person for July 2, 1999. (HABD Dep. at 26-28).

When Truman attempted to speak with Plaintiff regarding his unapproved leave, he reacted in a way that she perceived to be loud and disrespectful, and he received written discipline for his behavior.  (Memorandum of July 15, 1999; Griffin Dep. at 67-72; Sawyer Dep. at 14-19).  Plaintiff

---

6-month probationary period. (Carter Dep. at 81-82, 106-08; HABD Dep. at  52).

[7] Truman terminated Keith for her failure to comply with HABD's attendance policies. (HABD Dep. at  282-83).

admits that he may have raised his voice an octave level to show that he was "concerned" about the issue (Plaintiff Dep. at 205, 440-42), but he maintains that he never yelled at Truman, stood over her or used profanity toward her. (Plaintiff Dep. at 204-208). During the course of the conversation, Plaintiff told Truman that he believed the work rules were being applied disparately.  (Plaintiff Dep. at 499-501).   According to Plaintiff, Truman told him that he could not bring a "claim" against her because she had hired him. (Plaintiff Dep. at 499-501).

Plaintiff's requests for leave on July 1 and 2, 1999 were never approved and those hours were deducted from Plaintiff's biweekly check. (HABD Dep. at 22-23).  Plaintiff filed a written grievance with HABD over the denial of his leave requests. (HABD Dep. Ex. 22).

Following the filing of Plaintiff's grievance, Truman issued an interoffice memorandum addressing HABD policies for reporting lateness and absence:  "For employees in this office, notification is to be made directly to me or the charge person for the day regarding lateness or absence. In the event of my unavailability or unavailability of the charge person, your notice is to be given to either Ms. Griffin or Ms. Sawyer (or substitute for either) in this office or to the secretary of the charge person."  (Plaintiff Dep. Ex. 7, p. 3).

**C.      Leave Dispute Regarding March 3, 2000 Pay Period**

On March 6, 2000, Plaintiff notified Truman that he had arrived 18 minutes late on March 3, 2000, and he asked to make up the time by substituting unused time from his lunch hour.  (HABD Dep. at Ex. 28).  Truman approved the request, noting that Plaintiff had 22 minutes leftover from lunch that could be applied toward the total hours worked.  (HABD Dep. at Ex. 28).  However, Truman warned Plaintiff that even with the 22-minute substitution, he was still short 30 minutes of work for that two-week pay period (ending March 3, 2000).  (HABD Dep. at Ex. 28).   Time Tracker reflected that

8

Plaintiff had only worked 79.5 hours; the usual time worked for a pay period was 80 hours.  (HABD

Dep. at  260-62, Ex. 28).  Although Truman requested that Plaintiff submit a leave request to justify the

30-minute disparity, Plaintiff maintained that Time Tracker must be incorrect because he had, in fact,

worked 80 hours.  (HABD Dep. at Ex. 28).   Therefore, Truman only approved Plaintiff to be paid for

79.5 hours of time.  (HABD Dep. at  260-62, Ex. 28).

      Later in March 2000, when Plaintiff and Truman had a disagreement about the hours he had

worked, Truman felt that Plaintiff was harassing her, and she accused him of racism. (HABD Dep. at

253-265).  Truman then told Ruggs that she believed Plaintiff had a problem accepting supervision from

females, particularly African-American females, and that she believed Plaintiff had a problem with her

race.  (HABD Dep. at 71, 269-270).

### D.      Computer Passwords

      Executive Secretary Griffin was the network administrator for the Legal Department, and she

had access to all of the computers in the office.  (Griffin Dep. at 87-88).  Based upon the instability of

the network, Griffin decided to limit employee computer access, including Plaintiff's access, for a

period of time.  (Griffin Dep. at 88-89).   Truman did not make the decision that Plaintiff would not be

issued a password to his computer.  (Truman Dep. at 60, 77).   In fact, she did not know that Plaintiff

wanted or needed a password, and if she had known, she would have made provision so he could gain

access.  (Truman Dep. at 77).

### E.      Security Code for Office

      A security code was needed to unlock the door to the Legal Department. (Griffin Dep. 41-42).

The evidence regarding who had the security code for the office is in dispute.  Plaintiff recalls that

Griffin had the security code because, "[i]t was her job to be there early, to open up the office, turn on

everybody's computer, [and] turn on the lights." (Plaintiff Dep. at 375). Griffin recalls that both Assistant General Counsels - Plaintiff and Rosenbaum - also knew the security code to enter the office. (Griffin Dep. at 42-44). Secretary Sawyer and Rosenbaum both recall that Sawyer and Griffin were the only ones with the security access code. (Sawyer Dep. at 26-28; Rosenbaum Dep. at 52-53).[8] Nevertheless, Truman testified that even if Plaintiff did not have the access code to enter the building, she never told anyone to deny Plaintiff access and if she had known that Plaintiff needed the security code, she would have made arrangements for him to have it. (Truman Dep. at 77).

F.    **Elimination of Plaintiff's Assistant General Counsel Position**

Beginning in 1997, Truman made yearly budget requests to HABD for the addition of paralegal/investigator positions to the Legal Department, none of which were approved. (Truman Dep. at 26-28, Exs. 5-8; HABD Dep. at 56-58). Truman and Ruggs also verbally discussed a number of different scenarios for reorganization of the Legal Department, including "a paralegal for investigation" and "a supervisory assistant general counsel position." (HABD Dep. at 57; *see also* Truman Dep. at 26-28). Finally, as part of the 2000-2001 budget, Ruggs submitted a budget which proposed elimination of one of the Assistant General Counsel positions and the addition of two paralegal positions. (Truman Dep. at 26-28; HABD Dep. at 56-58). Truman was in favor of the proposal and believed that the two paralegals would be more efficient in terms of the operation of the department. (Truman Dep. at 26-28). The proposal was approved by the Board of Commissioners. (HABD Dep. at 88; Truman Dep. at Ex. 9).

---

[8] Rosenbaum recalls that at five o'clock, she and Plaintiff had to leave with Griffin and Sawyer because they had to lock the door and key in the security code. (Rosenbaum Dep. at 53-54).

Thereafter, Ruggs consulted with Carter, HABD's Human Resources Director, regarding the appropriate process of selecting the position for elimination. (Carter Dep. at 108-11). Carter explained to Ruggs that he could use either performance evaluations or seniority as a criterion for selecting which Assistant General Counsel position to eliminate, and Ruggs settled on seniority. (Carter Dep. at 108-11).[9] Truman was not involved in the decision to use seniority as the determining factor. (Truman Dep. at 56). Because Rosenbaum had more seniority than Plaintiff, Plaintiff's position was eliminated. (Carter Dep. at 108-09). No other employee in the Legal Department was affected by the reorganization. (HABD Dep. at 49).

On June 1, 2000, HABD notified Plaintiff by letter that it was reorganizing the Legal Department and eliminating the position that he occupied. (HABD Dep. at Ex. 25). The letter stated that, "should [he] have an interest in other positions within the [HABD]," he could apply for positions

_____

[9] Plaintiff does not dispute that Carter advised Ruggs that he could choose either seniority or performance as the elimination criterion; rather, Plaintiff disputes the *accuracy* of Carter's advice. (Docs. # 151, 152 at Statement of Fact No. 44). Plaintiff maintains that Carter's advice was incorrect because seniority was the only available standard for job elimination. (*Id.*). Plaintiff cites to HABD's Human Resources Policy Manual, which provides that any employee "who has received notice of layoff may displace any other less senior employee in a position for which the noticed employee [is qualified]." (HABD Dep. at Ex. 2, Section 4.8.2). Plaintiff's contention is flawed. The employee handbook does not mandate that the initial lay-off decision must be based on seniority. Rather, the rule permits a laid off employee to "notify the Department of Human Resources within seventy-two (72) hours of [the lay-off] that he would like to exercise his right to displace a less senior employee." (HABD Dep. at Ex. 2, Section 4.8.2). This bumping option did not obligate Ruggs to base his decision on seniority.

for which he was qualified. (HABD Dep. at Ex. 25).[10]  Plaintiff left in good standing and was eligible

for rehire. (HABD Dep. at 165-166).

HABD replaced the eliminated Assistant General Counsel position with two paralegal positions

occupied by Eddie Rox, an African-American male, and Valerie Fagan, an African-American female.

(HABD Dep. at 285-86).  The reorganization resulted in the elimination of an attorney at a cost of

$47,000, which was replaced with two paralegals at a cost of $60,000. (HABD Dep. at 85-87, 94-96).

Carter argued to the EEOC that the reorganization saved the Legal Department $47,000 because

attorney salaries are charged as legal expenses to the Legal Department and paralegals are charged as

an administrative expense to HABD as a whole. (HABD Dep. at 85-87, 94-96).  The evidence is

disputed as to whether the reorganization actually was cost-efficient. Plaintiff disputes Carter's

testimony by pointing out that the 1999-2000 budget and the 2000-2001 budget both reflected legal

expenses of $224,000, despite Carter's explanation that Legal Department expenses were reduced by

$47,000 in 2000-2001. (HABD Dep. at Ex. 6).  Ruggs testified that the $224,000 figure on the budget

---

[10]  Plaintiff argues that he was not "offered" another position at HABD and that, pursuant to
Section 4.8.2 of the employee handbook, it is HABD's policy that any employee laid off "may
displace any other less senior employee" if he meets the qualifications for that position and the
position is "at or below the grade or step level of the employee receiving notice."  (HABD Dep. at
Ex. 2, Section 4.8.2).  Plaintiff points out that at other times when HABD reorganized departments,
affected employees were offered other positions in other areas of the district.  (HABD Dep. at 172-
173).  Plaintiff's argument fails to take into account the last sentence of Section 4.8.2 which states:
"The employee receiving notice of layoff shall notify the Department of Human Resources within
seventy-two (72) hours of receiving such notice of the intention or desire to continue in
employment."  (HABD Dep. at Ex. 2, Section 4.8.2).  In this case there is no evidence that Plaintiff
timely notified HABD of his desire for continuing employment to trigger the provision of Section
4.8.2.  HABD had no official policy of *offering* discharged employees the positions occupied by
other employees. HABD made it clear in Plaintiff's termination letter that he was "welcome to
apply" for another position, which he later did.

is the total amount authorized by HUD for costs in the Legal Department, while actual Department costs were typically less than that.  (HABD Dep. at 96-100).

G.    **Rosenbaum's Resignation**

In September 2001, Rosenbaum resigned from her employment with HABD, leaving Truman as the only attorney in the office.  (HABD Dep. at 89-92; Truman Dep. at 47-49).  Subsequently, HABD began utilizing attorneys (a White male and an African-American female) employed by a temporary agency to perform the work which had been performed by Rosenbaum.  (HABD Dep. at 89-92, 120, 294-96).

On September 18, 2001, Truman requested that HABD fill the vacancy created by Rosenbaum's resignation with a permanent employee.  (Truman Dep. at 47-49).  Ruggs approved the request and created a panel of individuals from different departments within HABD to interview the candidates. (HABD Dep. at 125-26).  Truman was not on this panel, was not present during the interviews, and did not participate in the interviews or rate any of the candidates.  (Truman Dep. at 50).

Plaintiff applied for the position and was interviewed by the panel.  (Carter Dep. at 144; HABD Dep. at 125, 135).  However, the panel did not recommend Plaintiff for the position; instead, they recommended that HABD hire one of the attorneys who had been working through the temporary agency.  (HABD Dep. at 134-35).

During the process of advertising and interviewing for the position, Ruggs asked Truman whether her department was operating efficiently with the temporary attorneys in place after Rosenbaum's separation.  (Truman Dep. at 50-52).  Truman responded that her department seemed to be operating fine.  (Truman Dep. at 50-52).   Based upon this information, Ruggs concluded that it would be more cost-effective to continue with the use of temporary attorneys rather than hiring a

permanent employee.  (HABD Dep. at 129-33).  Therefore, Ruggs decided not to fill the vacancy left by Rosenbaum with a permanent employee, and the two temporary attorneys, one of whom was a White male, remained in the office.  (HABD Dep. at 129-33; Truman Dep. at 50-54; Carter Dep. at 145).

Plaintiff filed an EEOC Charge of Discrimination with the EEOC on November 28, 2000 (HABD Dep. at Ex. 3), and this lawsuit on August 13, 2001. (Doc. # 1).

## IV.    Applicable Substantive Law and Discussion

As a threshold matter, the court must determine what claims are currently before it on this second round of summary judgment motions.  Both Defendants have moved again for summary judgment as to all claims against them.  (Docs. # 150, 151).  However, the only issue considered by the Eleventh Circuit on interlocutory appeal – and therefore the only issue on remand to this court – is Defendant Truman's qualified immunity defense.  The Eleventh Circuit's instructions on remand were for Plaintiff to replead Count Three to allege "precisely what it is that Truman did to deny Tucker . . . the equal protection of the law,"[11] and for the court to "comb the record to eliminate any material issues of fact, and . . . decide whether Truman's conduct denied Tucker any rights clearly established by Supreme Court or Eleventh Circuit precedent."  (Doc. # 133).

The analysis of qualified immunity, however, necessarily requires this court to reexamine the merits of Plaintiff's claims.  Whether Plaintiff's claims can stand on their merits is "an analytically earlier stage of the inquiry into qualified immunity." *Siegert v. Gilley*, 500 U.S. 226, 227 (1991).  The Supreme Court has clarified that, in evaluating a claim of qualified immunity, a court "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and

---

[11] As the court has already noted, although the Eleventh Circuit also singled out Plaintiff's due process claims for repleader, all of Plaintiff's due process claims were abandoned prior to issuance of the court's first summary judgment opinion and prior to Truman's appeal.

14

if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (internal quotations omitted).  "[D]etermining the merits of a claim is part and parcel of the qualified immunity inquiry, not a separate question." *Hartley v. Parnell*, 193 F.3d 1263, 1271 (11th Cir. 1999).  Thus, in order to appropriately address Truman's qualified immunity defense, this court must first undertake an analysis of the merits of Plaintiff's claims against Truman.

However, with respect to Plaintiff's claims against HABD, it is abundantly clear that this court's disposition of HABD's first motion for summary judgment was not before the Eleventh Circuit on appeal. (Doc. # 133).  Therefore, HABD's second motion for summary judgment is more appropriately treated as a  motion to reconsider the court's earlier decision to deny summary judgment on all claims. On reconsideration, HABD has not offered any substantive argument in support of its position, deciding instead to summarily argue that "[s]hould the Court find in Ms. Truman's favor on Part A of Ms. Truman's argument, then HABD similarly would be entitled to judgment as a matter of law as to all claims against it by the Complaint and its several amendments."  (Doc. # 151).

As outlined below, the court has reexamined its prior memorandum opinion and the evidence submitted by Plaintiff and both Defendants and has reconsidered all of the claims and defenses asserted in this case, including qualified immunity.  As also noted below, Plaintiff's terms and conditions claims have been abandoned and, in any event, cannot survive summary judgment. Moreover, the court finds that Truman's summary judgment motion is due to be granted both on the merits and on the defense of qualified immunity because the undisputed evidence demonstrates that she did not participate in the decisions about which Plaintiff complains.  However, consistent with its July 22, 2004 memorandum opinion ruling on the first round of summary judgment motions, the court finds that genuine issues of

material fact preclude summary judgment in favor of HABD on Plaintiff's termination and retaliation claims. The court will address each of Plaintiff's claims in turn.

### A.      Terms and Conditions Claims

Plaintiff's brief in opposition to the Defendants' second motions for summary judgment narrows his claims to only two allegations: discrimination based on termination of his employment and retaliation in the form of refusal to rehire. (Doc. # 152, at 27, 35). As Truman points out in her reply brief, Plaintiff has abandoned all of his various claims based upon general terms and conditions, and for good reason. (Doc. # 153, at 1).

Plaintiff's prior "terms and conditions" claims were based on the following denials: (1) sick leave in July 1999; (2) thirty minutes of paid work in March 2000; (3) computer passwords; and (4) the access code to the Legal Department.[12]  All of these claims fail on the merits. Plaintiff's claim that he was denied paid leave for absences in July 1999 is time-barred under the two-year statue of limitations applicable to § 1983 claims. *Owens v. Okure*, 488 U.S. 235, 236, 249-50 (1989); Ala. Code § 6-2-38(1); *Lufkin v. McCallum*, 956 F.2d 1104, 1105-06 (11th Cir. 1992). Plaintiff filed his complaint on August 13, 2001 (Doc. # 1), and all claims that occurred prior to August 13, 1999 are outside of the statute of limitations.

Moreover, Plaintiff's claim that he was denied thirty minutes of paid work in March 2000 cannot withstand summary judgment because he has not shown that he was treated less favorably than African-American or female employees. It is undisputed that Defendants disciplined numerous other employees, male and female, African-American and White, for the same leave and attendance issues for which

---

[12] A complete recitation of the facts surrounding these claims can be found in Section III.B-E *supra*.

Plaintiff was disciplined. (HABD Dep. at 250-51, 280-83; Carter Dep. at 101-03). In fact, Truman terminated Rhonda Keith, an African-American female, for her failure to comply with HABD's leave policies. (HABD Dep. at 282-83). Although Plaintiff claims that Truman treated Rosenbaum (a White female) more favorably under similar circumstances by allowing her to use vacation time to substitute for time not worked rather than docking her pay, it is undisputed that Truman asked Plaintiff to submit a leave request to justify the thirty minute time disparity. (HABD Dep. at Ex. 28).[13] There is no evidence that Truman's actions were the result of intentional discrimination.

Finally, Plaintiff's claims that he was denied computer passwords and the building access code fail both because they do not rise to the level of an adverse employment action, *see Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001) (finding that "an employee must show a serious and material change in the terms, conditions and privileges of employment"), and because the undisputed evidence indicates that Truman was not involved in those decisions. (Truman Dep. at 60, 77).

Plaintiff's opposition to the second round of summary judgment motions failed to address his terms and conditions claims. Nevertheless, for the reasons stated above, even if Plaintiff had not abandoned these claims, the court finds that summary judgment in favor of *both* Defendants is appropriate.

**B.    Termination/Reduction-in-Force Disparate Treatment Claims**

Plaintiff claims that he was subject to discrimination because of his race and/or gender when his Assistant General Counsel position was terminated. (Doc. # 145). Plaintiff's § 1983 disparate

---

[13] In fact, Truman approved Plaintiff's request that he use time leftover from his lunch hour to make up for his arrival eighteen minutes late on March 3, 2000. (HABD Dep. at Ex. 28). While notifying Plaintiff of that approved request, Truman also informed Plaintiff that even with the substitution, he was still short thirty minutes of work for the two-week pay period ending March 3, 2000. (HABD Dep. at Ex. 28).

treatment claim against Truman is premised on the Fourteenth Amendment right to equal protection, while his claim against HABD is brought under Title VII. However, "[i]n a case such as this alleging disparate treatment, in which § 1983 is employed as a remedy for the same conduct attacked under Title VII, the elements of the two causes of action are the same." *Richardson v. Leeds Police Dept.*, 71 F.3d 801, 805 (11th Cir. 1995) (finding that analysis of equal protection claim under § 1983 used *McDonnell Douglas* burden-shifting of Title VII disparate treatment). Accordingly, the court will utilize the same analysis for Plaintiff's Title VII and § 1983 claims.

As a general rule, in order to establish a *prima facie* case of disparate treatment on the basis of race or gender, Plaintiff must show: (1) he is a member of a protected class; (2) he suffered an adverse job action; (3) his employer treated similarly-situated employees outside his protected classification more favorably, or in the case of termination, that he was replaced by someone outside the protected class; and (4) he was qualified to do the job. *See McDonnell Douglas Corp. v. Green*, 411 U.S. at 802.

Because Plaintiff's position was eliminated,[14] however, the *prima facie* case for Plaintiff's termination claim is "a variant of the *McDonnell Douglas* test applicable to reduction-in-force cases" whereby Plaintiff must show: (1) he is in a protected class and was adversely affected by an employment decision; (2) he was qualified for his current position or to assume another position at the time of discharge; and (3) evidence by which a fact finder might reasonably conclude that the employer

---

[14] The parties are in agreement that Plaintiff's employment was terminated when his Assistant General Counsel position was eliminated as part of the reorganization of HABD's Legal Department. (Docs. # 151, 152). "Where a position is eliminated, the case is similar to a reduction-in-force case." *Mitchell v. Worldwide Underwriters Ins. Co.*, 967 F.2d 565, 567-68 (11th Cir. 1992).

intended to discriminate on the basis of race and/or sex in reaching the decision at issue. *Earley v. Champion International Corp.*, 907 F.2d 1077, 1082 (11th Cir. 1990).[15]

For the reasons outlined below, the court finds that Truman is due summary judgment on this claim, while disputed issues of material fact again preclude summary judgment in favor of HABD on this claim.

### 1.    Plaintiff's Claim Against Truman

Plaintiff argues that "[t]he proper inquiry is whether the elimination of one of two positions, aimed at terminating a specific employee on the basis of race and gender, violated Tucker's constitutional rights." (Doc. # 152, at 29-30). Having closely examined the summary judgment record, the court finds that summary judgment in favor of Truman is appropriate because the undisputed evidence demonstrates that she did not participate in the decision to eliminate Plaintiff's position.

The undisputed evidence shows that at least three years prior to the June 2000 elimination of Plaintiff's position, Truman began making budget requests for the addition of a paralegal/investigator (Truman Dep. at 26-28, Exs. 5-8; HABD Dep. at 56-58), and Truman and Ruggs began discussing a number of different scenarios for reorganization of the Department, including the addition of "a paralegal for investigation" and/or the creation of "a supervisory assistant general counsel position." (HABD Dep. at 57; *see also* Truman Dep. at 26-28). None of those scenarios were actually submitted to the Board for approval, however. (HABD Dep. at 57). After years of discussions, the 2000-2001 budget submitted by Ruggs to the Board for approval proposed elimination of one of the Assistant

---

[15] If a position is entirely eliminated in a reduction-in-force for nondiscriminatory reasons, "for plaintiff to prevail against his employer he must show that he was qualified for another available job with that employer; qualification for his current position is not enough." *Earley*, 907 F.2d at 1083.

General Counsel positions, which was to be replaced with two paralegal positions.  (Truman Dep. at 26-28; HABD Dep. at 56-58).

There is no question that Truman was in favor of the proposal and believed that the two paralegals would be more efficient in terms of the operation of the department. (Truman Dep. at 26-28). However, it is undisputed that it was *Ruggs*, and not Truman, who consulted with Human Resources to determine the appropriate process of selecting the position to be eliminated (Carter Dep. at 108-11), and who decided to use seniority as the criterion for elimination.  (Carter Dep. at 108-11).  It is also undisputed that Truman was not involved in the decision to use seniority as the determining factor (Truman Dep. at 56), and there is no evidence that Truman suggested that Plaintiff's position be eliminated.    Because Ruggs opted to use seniority as the elimination criterion, and Rosenbaum had more seniority than Plaintiff, Plaintiff's position was selected for elimination.  (Carter Dep. at 108-09).

Plaintiff's contention that Truman, as head of the Legal Department, targeted Plaintiff's position because she "must have known" that it was HABD's policy to base reduction-in-force decisions on seniority is based on a faulty premise.  As noted earlier, HABD's Human Resources Policy Manual does not require that layoff decisions be based on seniority.  *See* footnote 9 *supra*.  Rather, it permits a laid-off employee to "notify the Department of Human Resources within seventy-two (72) hours of [the lay-off]" that he would like to exercise his right to displace a less senior employee.  (HABD Dep. at Ex. 2, Section 4.8.2).[16]  There is no evidence that Truman decided, knew, or should have known, that the elimination decision would be based on seniority.  Rather, the undisputed evidence shows that Ruggs, after consultation with Human Resources, made that decision.

---

[16] Moreover, the very existence of a policy that gives a laid-off employee the option of displacing another less senior employee (provided certain conditions are met) suggests that HABD reduction decisions are sometimes *not* based on seniority.

Accordingly, because the Rule 56 record shows that Ruggs alone, and not Truman, decided to eliminate Plaintiff's position, Truman was not involved in the decisional process and summary judgment in her favor is due to be granted.

### 2.    Claim Against HABD

Having determined that Plaintiff's termination claim against Truman fails because the undisputed evidence shows that she was not responsible for that decision, the court now turns to HABD's defense of this claim.  The court has reexamined the summary judgment record and concludes, as it did in the July 22, 2004 memorandum opinion, that HABD is not entitled to summary judgment on Plaintiff's termination claim.  When all factual disputes and justifiable inferences are resolved in favor of Plaintiff, the court finds that Plaintiff has adduced sufficient evidence against HABD to create questions of fact for the jury on the termination claim, including whether HABD accurately argued to the EEOC that it saved money in eliminating Plaintiff's position, whether the reorganization was financially beneficial as HABD asserts, whether HABD knew that Tucker would be targeted by the reorganization and adopted their reduction-in-force criterion to terminate him, and what circumstances surrounded the hiring of replacement help – and effective rejection of Plaintiff's application – when Rosenbaum resigned.  Additionally, there is sufficient evidence in the record to question the veracity of HABD's articulated reasons such that a reasonable jury could infer "that the reasons given by the employer were not the real reasons for the adverse employment decision" *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997), and/or that discrimination was a "motivating factor" for the employment action, even though HABD's legitimate reason may also be true or have played some role in the decision.  Therefore, the court finds that HABD's summary judgment motion is due to be denied as to Plaintiff's termination claim.

### C.    Failure to Rehire Retaliation Claims

Plaintiff also claims that HABD's decision not to rehire him was in retaliation for his filing verbal and written complaints of race and gender discrimination. (Doc. # 18). To establish a *prima facie* case of retaliation under Title VII, Plaintiff must prove: (1) he participated in an activity protected by Title VII; (2) he suffered an adverse personnel action; and (3) there is a causal link between the protected activity and the adverse employment action. *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1457 (11th Cir. 1998).

### 1.    Claim Against Truman

The court finds that summary judgment is due to be granted as to Plaintiff's retaliation claim against Truman because the undisputed evidence indicates that, once again, she was not involved in the decision about which Plaintiff complains.   After Rosenbaum resigned from her employment in September 2001, HABD began utilizing temporary attorneys while they began the process of hiring a permanent attorney.  (HABD Dep. at 89-92, 120, 294-96; Truman Dep. at 47-49). A panel, of which Truman was not a participant, was created to interview the candidates for the permanent position. (HABD Dep. at 125-26; Truman Dep. at 50).  Although Plaintiff applied for the position and was interviewed by the panel (Carter Dep. at 144; HABD Dep. at 125, 135),  the panel did not recommend him and instead recommended that HABD hire one of the attorneys who had been working through the temporary agency.  (HABD Dep. at 134-35).  It is undisputed that Truman was not on this panel, was not present during the interviews, and did not participate in the interviews or rate any of the candidates. (Truman Dep. at 50).

At some point during the process of advertising and interviewing for the position, Ruggs asked Truman whether her department was operating efficiently with the temporary attorneys in place after

Rosenbaum's separation  (Truman Dep. at 50-52), and Truman told him that her department seemed to be operating fine  (Truman Dep. at 50-52).   Based upon this information, Ruggs concluded that it would be more cost-effective to continue with the use of temporary attorneys, and he - not Truman - decided not to fill the vacancy left by Rosenbaum with a permanent employee.  (HABD Dep. at 129-33; Truman Dep. at 50-54; Carter Dep. at 145).

        The testimony is consistent that Truman was not involved in the decision not to rehire Plaintiff. However, Plaintiff urges this court to deny summary judgment based on his belief that Truman has been dishonest about her participation in the hiring process. Plaintiff claims that "[t]o accept Truman's testimony as credible would require this Court to ignore the fact that Truman was head of the Legal Department and historically had made all hiring decisions, including Tucker's original hiring."  (Doc. # 152, at 36).  In order to defeat summary judgment, however, Plaintiff must do more than ask the court to question the credibility of a witness.  He must introduce competent evidence demonstrating that a genuine issue of disputed fact exists.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (finding that a court must give testimony full weight unless and until such testimony is contradicted by competent evidence).  "[T]he party opposing summary judgment must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and . . . the opposing party may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Curl v. International Business Machines Corp.*, 517 F.2d 212, 214 (5th Cir. 1975) (citations omitted). Indeed, a court "may not weigh evidence and evaluate the credibility of the witnesses at the summary judgment stage."  *Ultimax Transp., Inc. v. British Airways, Inc.*, 231 F. Supp. 2d 1329, 1335 (N.D. Ga. 2002).

Plaintiff has not produced *any* evidence to question Truman's participation (or lack thereof) in the interview process that resulted in the rejection of Plaintiff for the available position. It is undisputed that Truman did not select applicants to be interviewed, create interview questions, conduct interviews, nor rate the candidates. Instead, Plaintiff has merely pointed to testimony by Ruggs that he believes implicates Truman in the ultimate decision not to fill the position. (Doc. # 152, at 36-37 (noting that Ruggs testified that he "checked with Ms. Truman at the time")). Although there is no question that Ruggs sought Truman's advice on whether her department was operating efficiently with the two temporary attorneys, the undisputed evidence is consistent that Ruggs made the decision not to fill the position. (HABD Dep. at 129 ("I [Ruggs] said then let's continue with this operation if it is working okay right now."); Truman Dep. at 51 ("Mr. Ruggs made the decision. I did not recommend. He asked me how things were going and I gave him the information.")). Moreover, Plaintiff has not disputed the fact that he was rejected by the panel – of which Truman was not a member – even before the decision not to fill the position was made. (HABD Dep. at 134-35; *see* Docs. # 151, 152 at Statement of Fact No. 36).

Accordingly, because Plaintiff has failed to demonstrate Truman's involvement in the decision not to rehire him, summary judgment in favor of Truman is due to be granted on Plaintiff's retaliation claim.

### 2.      Plaintiff's Claim Against HABD

On the other hand, the court finds that there are sufficient disputes of material fact related to the failure to rehire Plaintiff that prevent summary judgment in favor of HABD on this claim. The evidence demonstrates that Plaintiff had the necessary experience for the new position, left HABD on good terms, and received satisfactory reviews while employed there. Nonetheless, HABD decided not to rehire

Plaintiff in December 2001, mere months after he filed his August 13, 2001 complaint in this court. The court finds that given the close temporal proximity of the filing of Plaintiff's lawsuit and the decision not to rehire Plaintiff, factual questions exist for the trier of fact to resolve. For example, although HABD claims that it decided, separate and apart from Plaintiff's lawsuit, not to fill the position for which Plaintiff applied, there is no dispute that HABD inexplicably filed a motion in this case requesting the court to direct Plaintiff to withdraw his application for rehire on the grounds that Plaintiff's application for an open position during the pendency of his lawsuit "usurped" the function of the court. (Doc. # 21). The trier-of-fact must determine whether this and other conduct of HABD establish a retaliation claim. Accordingly, summary judgment on this claim is due to be denied.

### D.    Qualified Immunity

Having determined that Truman is due summary judgment on the merits of Plaintiff's claims, the court can now turn to Truman's qualified immunity defense. *See Siegert v. Gilley*, 500 U.S. 226, 227 (1991) (finding that the merits inquiry is "the first inquiry" in deciding whether the qualified immunity defense applies in a case).

Qualified immunity offers complete protection for government officials sued in their individual capacity if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The analysis utilizes an "objective reasonableness standard, giving a government agent the benefit of the doubt unless h[er] actions were so obviously illegal in the light of then-existing law that only an official who was incompetent or who knowingly was violating the law would have committed them." *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1366 (11th Cir. 1998). The Eleventh Circuit has cautioned that, "[b]ecause qualified immunity shields government actors in all but exceptional cases,

25

courts should think long and hard before stripping defendants of immunity." *Lassiter v. Alabama A & M University, Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir.1994).   "We generally accord ... official conduct a presumption of legitimacy." *United States Department of State v. Ray,* 502 U.S. 164, 179 (1991).

Under the qualified immunity doctrine, government officials performing discretionary functions are immune from suit unless the alleged conduct violates "clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818.[17] "Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Hope v. Pelzer*, 122 S. Ct. 2508, 2515 (2002) (internal quotations omitted). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Pelzer*, 122 S. Ct at 2515 (internal quotations omitted).

The qualified immunity analysis begins with a showing that the government official was acting within her discretionary authority; in other words, that "objective circumstances [exist] which would compel the conclusion that h[er] actions were undertaken pursuant to the performance of h[er] duties and within the scope of h[er] authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988).[18] If the

---

[17] "Clearly established" rights must be "developed [] in a concrete factual context so as to make it obvious to a reasonable government actor that his actions violate federal law." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).   Only Supreme Court, Eleventh Circuit, and Alabama Supreme Court cases can "clearly establish" the law in this Circuit.   *Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003).

[18] In determining whether this test is met, there is no analysis of whether the official actually acted lawfully.   See *Sims v. Metropolitan Dade County*, 972 F.2d 1230, 1236 (11th Cir. 1992).   Rather, the issue is whether "the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of [the governmental officer's] discretionary duties." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998).   As such, "[i]t is perfectly logical

court determines that the official was operating within her discretionary authority, it then must ask

whether the plaintiff's allegations, if true, establish the violation of a constitutional or statutory right.

*Bogle v. McClure,* 332 F.3d 1347, 1355 (11th Cir. 2003) (citing *Hope v. Pelzer,* 536 U.S. 730, 736

(2002) and *Saucier v. Katz,* 533 U.S. 194, 201 (2001)).  Finally, "[i]f a constitutional or statutory right

would have been violated under the plaintiff's version of the facts, the next step is to ask whether the

right was clearly established." *Bogle*, 332 F.3d at 1355.[19]

Through the vehicle of § 1983, Plaintiff has alleged that Truman violated his right to equal

protection when she terminated his position because of his race or sex and failed to rehire him in

retaliation for his complaints of discrimination.  The court finds that Plaintiff has failed to establish the

violation of a constitutional right because, as outlined more fully in Sections IV.B.1 and IV.C.1 *supra*,

the undisputed evidence shows that Truman did not participate in the acts of which he complains.

Therefore, Truman is due qualified immunity, and summary judgment is appropriate.  *See Burrell v.*

*Board of Trustees of Ga. Military College*, 970 F.2d 785, 792-93 (11th Cir.1992) ("Without a

---

for a court to find that someone who was acting illegally was acting within his discretionary
authority." *Godby v. Montgomery Co. Bd. of Educ.*, 996 F. Supp. 1390, 1401 (M.D. Ala. 1998).

[19] "Where the facts assumed for summary judgment purposes in a case involving qualified
immunity show mixed motives (lawful and unlawful motivations) and pre-existing law does not
dictate that the merits of the case must be decided in plaintiff's favor, the defendant is entitled to
immunity." *Foy v. Holston*, 94 F.3d 1528, 1533 (11th Cir. 1996). However, a "defendant is entitled
to qualified immunity under the *Foy* rationale only where, among other things, the record
indisputably establishes that the defendant in fact was motivated, at least in part, by lawful
considerations." *Stanley v. City of Dalton, Ga.*, 219 F.3d 1280, 1296 (11th Cir. 2000); *Bogle*, 332
F.3d at 1356; *see also Johnson v. City of Ft. Lauderdale, Fla.*, 126 F.3d 1372, 1379 (11th Cir. 1997).
Thus, even assuming that a defendant official acted with some discriminatory motive, such does not
"clearly establish that a reasonable official faced with the same evidence of [plaintiff's misconduct]"
would not have acted in the same manner. *Johnson*, 126 F.3d at 1379; *see Stanley*, 219 F.3d at
1297("Even if a reasonable police chief acted with retaliatory motive, the law in 1997 did not clearly
establish that a reasonable police chief - faced with the same undisputed evidence of [plaintiff's]
misconduct - should not have terminated [plaintiff] in the same manner.").

constitutional violation, there can be no violation of a clearly established constitutional right."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491-92 (11th Cir.1996) ("[P]laintiff has failed to show a violation of due process, and it necessarily follows that the defendants are entitled to summary judgment on qualified immunity grounds.")

## V.    Conclusion

For the reasons stated above, the court finds that Defendant Truman's motion for summary judgment is due to be granted and Defendant HABD's motion for summary judgment is due to be denied.  A separate order will be entered.

**DONE** and **ORDERED** this _____28th_____ day of September, 2005.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE