# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **BARRY W. TUCKER,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:01-CV-2038-RDP** |
| | } | |
| **HOUSING   AUTHORITY   OF   THE** | } | |
| **BIRMINGHAM DISTRICT,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

The court has before it Defendant's Response to the Court's Order Regarding Front Pay and Prejudgment Interest (Doc. # 218); Plaintiff's Brief Relative to Prejudgment Interest in Response to the Court's Post Trial Order (Doc. # 219); and Plaintiff's Brief Relative to Front Pay in Response to the Court's Post Trial Order (Doc. # 220).   The parties' submissions were filed in response to the court's request for assistance in determining both the appropriate time period and amount of front pay and the appropriate amount of prejudgment interest on the jury's back pay award.   (Doc. # 212, at 64, 66) (hereinafter the "May 24, 2006 opinion").   For the reasons outlined below, the court has determined the following: (1) front pay is not appropriate in this case because the evidence demonstrates that, as of the date of the jury's verdict, Plaintiff had been returned to his "rightful" place; (2) Plaintiff is due an award of prejudgment interest in the amount of $34,551.41 *plus* interest owed up to the entry of the court's Final Judgment in this matter.

## I.      Front Pay

As outlined in the May 24, 2006 opinion, this court abides by the Eleventh Circuit's prescription that "prevailing Title VII plaintiffs are presumptively entitled to either reinstatement or front pay."  *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1528 (11th Cir.1991); *E.E.O.C. v.*

*W&O, Inc.*, 213 F.3d 600, 619 (11th Cir. 2000).   Having determined that reinstatement is inappropriate in this case, and presuming (as we must) that Plaintiff is entitled to front pay, this court asked the parties to address the appropriate time period and amount of front pay due in this case.

In response, Plaintiff requests that the court award him $39,432.73 in front pay for a period of two years post-judgment (2006 and 2007) and refers the court to a number of decisions from various jurisdictions awarding front pay for an average of one to three years post-judgment.   He arrives at his requested figure of $39,432.73 by calculating his estimated future wages at HABD in 2006 and 2007 (based upon the salary range for Plaintiff's Assistant General Counsel Position and projecting an annual growth rate of 4.5%), minus his projected future wages earned in other employment in 2006 (calculated by averaging his income in 2004 and 2005 and then increasing that average by a growth rate of 5.0%) and 2007 (calculated by increasing his 2006 projected income by 5.0%), and reduced to present value by using a 2.0% discount rate.   (Doc. # 220, Ex. 1).   Defendant responds with a blanket assertion that Plaintiff should receive $0.00 in front pay because he failed to: (1) mitigate his damages; (2) present any evidence that emotional distress precluded him from obtaining subsequent employment; and (3) provide the court with information necessary to calculate a "reasonably certain" front pay award.   (Doc. # 218, at 2-6).[1]   Defendant's arguments rely on case law from other circuits and inexplicably ignore Eleventh Circuit precedent that a prevailing Title VII plaintiff is presumptively entitled to front pay.

---

[1] With respect to Defendant's third argument, the court notes that it is axiomatic that awarding prospective relief involves some risk of uncertainty.   However, the speculative nature of front pay does not preclude such an award.   "'District courts have had considerable experience with damages for future wages in employment contract and personal injury cases, . . . as well as front pay cases under Title VII.'" *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1552 (11th Cir. 1988) (quoting *Whittlesey v. Union Carbide Corp.*, 742 F.2d, 724, 728 (2d Cir.1984)).

2

A.       **Applicable Substantive Law**

Although the court ultimately agrees with Defendant that the appropriate amount of front pay due Plaintiff in this case is $0.00, it so finds for reasons articulated by the Eleventh Circuit, not the Defendant.  In this Circuit, Defendant is correct that "[t]he duty to mitigate damages by seeking employment elsewhere will, of course, limit the amount of front pay available." *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1552 (11th Cir. 1988).   Both the parties and the court agree that, based upon the evidence presented at trial, the "logical presumption" from the jury's $93,990.38 back pay award, which approximates two years of back pay at Plaintiff's base salary without benefits[2] instead of the five years of back pay requested by Plaintiff, is that the jury found that Plaintiff failed to mitigate his damages and, therefore, it reduced his damages accordingly.  (Doc. # 211, at 49, 54-55; Doc. # 204, at 6-7).   Nonetheless, although the jury's finding that Plaintiff failed to mitigate his damages may limit or reduce the amount of front pay recoverable, it does not serve - as Defendant suggests - as an automatic bar to recovery of front pay.  *See, e.g., Castle*, 837 F.2d a 1552 (noting that mitigation will *limit* the amount of front pay).

Practically speaking, however, the court must consider the effect of the jury's mitigation finding in conjunction with the delicate balance of making Plaintiff "whole" while simultaneously preventing a recovery windfall.   Accordingly, because front pay is the monetary equivalent of reinstatement, it logically must be limited to the date on which Plaintiff attained his "rightful place," *i.e.,* the position he would have been in but for the discrimination.  *James v. Stockham Valves and*

---

[2]  The jury's back pay award was $15.98 more than what Plaintiff would have earned in two years at $46,987.20, which was presented to the jury as the rate of his salary without benefits when his position was terminated.  (PX40, PX50).  The Eleventh Circuit has made clear that "'unrealistic exactitude is not required' as the back-pay calculation may be based on 'just and reasonable inference' of the missing or imprecise figure."  *Akouri v. State of Florida Dept. of Transp.,* 408 F.3d 1338, 1343 (11th Cir. 2005) (internal citations omitted).

*Fittings Co.*, 559 F.2d 310, 358 (5th Cir. 1977)*; E.E.O.C. v. Joe's Stone Crab, Inc.*, 15 F. Supp. 2d 1364, 1380 (S.D. Fla. 1998); *see also Lewis v. Federal Prison Industries, Inc.*, 953 F.2d 1277, 1282 n.2  (11th Cir. 1992)(Tjoflat, J. dissenting in part) (citing *Wilson v. S & L Acquisition Co.*, 940 F.2d 1429, 1433 n.6, 1434 (11th Cir. 1991) and noting that "the amount of damages recovered may be mitigated by claimant's new employment").

As outlined in more detail below, once the calculations provided by Plaintiff are modified appropriately to reflect the jury's findings and the law of the Eleventh Circuit, it becomes apparent that Plaintiff is projected to earn *more* in 2006 and 2007 in his current employment than he would have earned had he remained (or been rehired) in his position at HABD.  Thus, based on the evidence presented at trial and the court's experience with Title VII employment discrimination cases, *see Castle*, 837 F.2d at 1562, the court finds that Plaintiff indeed had been returned to his "rightful position" as of the date of the jury's verdict and therefore is not due any front pay in addition to the compensation he was awarded for his back pay and emotional distress.

B.      **Analysis of Plaintiff's Front Pay Calculations**

As noted earlier, Plaintiff arrives at his requested amount of front pay by comparing the estimated wages that he would have earned from HABD with his projected earnings from his current other employment.   Analyzing each of these components separately, the court finds first that Plaintiff's "Estimated Wages from HABD" must be modified because they fail to take into account the jury's decision to award back pay for base salary alone without additional benefits.  (Doc. # 200, Ex. 1, at 1).  According to Plaintiff's calculations, if he were still employed at HABD, his expected total compensation (including employer-paid fringe benefits and employer-matched Social Security

contribution) would have been $71,663.17 in 2006 and $74,888.00 in 2007.[3]  (Doc. # 200, Ex. 1, at 1).  However, out of deference to the jury's back pay award, which approximated two years of pay at the rate of salary *without benefits* (*see* discussion foonote 2 *supra*) and presumptively took into account Plaintiff's failure to mitigate his damages, the court finds that the better approach is to estimate compensation from HABD based upon salary *alone*.  The evidence suggests that while employed at HABD, the value of Plaintiff's employer-provided benefits was approximately 15% of his total compensation.[4]  Thus, the court estimates that HABD would have paid Plaintiff base pay in the approximate amounts of $60,913.69 in 2006 (85% of $71,663.17) and $63,654.80 in 2007 (85% of $74,888.00).

Likewise, the second component of Plaintiff's front pay calculation - his predicted 2006 and 2007 earnings from his current employment – must be tweaked to reflect more accurately Plaintiff's earning potential.  Plaintiff arrived at his 2006 projected salary by averaging his salaries from 2004 ($38,209.00) and 2005 ($60,766.00) and then increasing that average by 5.0%. (Doc. # 220, Ex. 1,

---

[3] Although Plaintiff's table  of "Estimated Wages from HABD" includes projected HABD salaries for the years 2000-2005 based upon a growth rate of 4.5 %, Plaintiff failed to estimate HABD salary figures for 2006 and 2007, the very years relevant to the court's front pay analysis.  (Doc. # 220, at Ex. 1, at 1).  Nonetheless, multiplying Plaintiff's 2005 estimate for HABD wages of $68,577.19 by his projected growth rate of 4.5 %, the court presumes that Plaintiff would estimate his 2006 HABD salary *plus benefits* to be $71,663.17 and his 2007 HABD salary *plus benefits* to be $74,888.00.  These figures are consistent with Plaintiff's summary figure of $146,551.17, which purports to be the combined total of 2006 and 2007 projected future wages *and benefits* at HABD.  (Doc. # 220, at Ex. 1, at 3).

[4] Because all of Plaintiff's projected salary estimates are pyramided on a 2000 figure that includes benefits, the court is unable to compute an exact figure solely for Plaintiff's projected base salary in 2006 and 2007. Nonetheless, the evidence provided by Plaintiff in a footnote to his calculations suggests that his 2000 estimated wages figure of $55,029.84 is comprised of 85% base salary ($46,987.20) and 15% employer-provided benefits ($8,042.64). (Doc. # 220, Ex. 1, at 1 n.2). Thus, based upon this data, the court understands that post-2000, HABD's total compensation package would include employer-provided benefits of approximately 15% of the total amount.

at 2).  As a result, Plaintiff estimates that he actually will earn *less* in 2006 than in 2005.  (Doc. #

220, Ex. 1, at 2).  The court believes, in its discretion and based upon the evidence presented at trial

regarding Plaintiff's earning potential, that the more appropriate calculation assumes that Plaintiff

should continue to increase his salary at a steady rate every year.  Thus, the court concludes that the

correct method of calculating Plaintiff's 2006 projected salary is simply to increase his 2005 salary

by 5.0% for a total of $63,804.30.  Similarly, Plaintiff's 2007 projected salary would be $66,994.51,

reflecting a 5.0% increase over his 2006 salary.

Based upon these modified figures, the court projects that in his current employment,

Plaintiff will make $3,000.00 or more a year beyond what he would make if he were still employed

at HABD.  (*Compare* 2006 projected salary of $63,804.30 *with* 2006 estimated HABD earnings of

$60,913.69 *and compare* 2007 projected salary of $66,994.51 *with* 2007 estimated HABD earnings

of $63,654.80).  Accordingly, because at the time of the jury's verdict Plaintiff already had returned

to his rightful place and been "made whole" from an earnings standpoint, the court finds, in

accordance with the law of this Circuit, that an additional award of front pay would be an

inappropriate windfall for Plaintiff.   *James*, 559 F.2d at 358 (5th Cir. 1977); *Lewis*, 953 F.2d at

1282 n.2; *Wilson*, 940 F.2d at1433 n.6.

C.    **Prejudgment Interest**

As outlined in the May 24, 2006 opinion, the court has determined in its discretion[5] that Plaintiff is due an award of prejudgment interest on the jury's back pay award. (Doc. # 212, at 66). After balancing the equities, the court concluded that prejudgment interest is fair and necessary to make Plaintiff whole, is in accordance with the remedial purposes of Title VII, and is appropriate because Plaintiff's back pay is easily ascertainable. The court also found that the jury's mitigation finding is insufficient to overcome the presumption in favor of prejudgment interest. (Doc. # 212, at 66). Having determined that prejudgment interest is appropriate, the court noted that the "interest rate for prejudgment interest on back pay awards under Title VII depends on the IRS prime rates calculated in accordance with 28 U.S.C. § 1961." *McKelvy v. Metal Container Corp.*, 854 F.2d 448, 454 (11th Cir. 1988). The court then invited the parties to submit, *preferably by agreement*, a proposed calculation of prejudgment interest on the jury's back pay award based upon the average IRS prime rate during the relevant time period.

The court feared that inviting the parties to reach an agreement on *any* matter related to this litigation - even something so facile as multiplying a sum-certain back-pay award by a sum-certain

---

[5] Although the prevailing view is that the decision to award prejudgment interest on back pay is discretionary, *George v. GTE Directories Corp.,* 114 F. Supp. 2d 1281, 1300 (M.D. Fla. 2000); *Gloria v. Valley Grain Products, Inc.*, 72 F.3d 497, 500 (5th Cir. 1996), many courts apply a presumption of entitlement to prejudgment interest on an award of back pay to a successful Title VII plaintiff. *Richardson v. Tricom Pictures & Productions, Inc.*, 334 F. Supp. 2d 1303, 1317 (S.D. Fla. 2004); *Drews v. Social Dev. Com'n*, 95 F. Supp. 2d 985, 991 (E.D. Wis.1998); *Robinson v. Southeastern Pa. Transp. Auth.*, 1993 WL 126449, *2 (E.D. Pa.1993). The Eleventh Circuit has noted, "this court [has] reserved ruling on whether the decision to award prejudgment interest in a Title VII back pay case lies within the discretion of the district court." *E.E.O.C. v. Guardian Pools, Inc.*, 828 F.2d 1507, 1512 (11th Cir. 1987) (citing *Smith v. Am. Serv. Co. of Atlanta, Inc.*, 796 F.2d 1430, 1432-33 (11th Cir. 1986)). More recently in an ADEA case, the Eleventh Circuit held that an award of prejudgment interest is discretionary with the court. *Wilson v. S & L Acquisition Co., L.P.*, 940 F.2d 1429, 1439 (11th Cir. 1991).

percentage set by the IRS - would be an exercise in futility.  Indeed, Plaintiff's prejudgment interest brief indicates, "[a]lthough the parties made some attempts to reach an agreement on the method and amount of prejudgment interest, they were unable to reach agreement"  (Doc. # 219, at 5 n.4), and Defendant's brief, relying upon arguments previously rejected by this court, continues to deny that Plaintiff is due any amount of prejudgment interest.   (Doc. # 218, at 7-9).

Nonetheless, perhaps unknowingly and to their own mutual surprise, both parties' briefs attached the same document entitled "Back pay Prejudgment Interest Calculations"[6] which utilizes a bi-weekly method[7] to compute $34,551.41 in prejudgment interest owed on the jury's back pay award (which approximates two years of salary) up to the date of the jury's verdict.  (Doc. # 218, at Ex. A; Doc. # 219, Ex. 1).   In addition, Plaintiff has submitted a revised chart of calculations which includes additional interest owed for the period from February 6, 2006, the date of the jury's verdict, to August 2, 2006, the date of entry of Final Judgment in this matter, for a total of $38,056.50 in prejudgment interest on the jury's back pay award.  (Doc. # 223).[8]  Because the court is satisfied that the parties' bi-weekly calculations utilize the proper method and the appropriate IRS prime rate, also known as "underpayment rate" as determined by the IRS quarterly, the court finds

---

[6] Defendant, of course, notes that it only attached interest calculations to comply with the court's order and maintains its position that no amount of prejudgment interest is proper in this case.  For the same reasons outlined in the court's May 24, 2006 memorandum opinion (Doc. # 212), the court again rejects Defendant's arguments and finds, in its discretion, that an award of prejudgment interest is appropriate in this case.

[7] It is undisputed that Plaintiff was paid bi-weekly at HABD.

[8] When the parties submitted their initial calculations of prejudgment interest, the court had not yet entered a Final Judgment because it was still considering Plaintiff's requests for equitable relief, and thus the parties only calculated interest through the date of the jury's verdict.  Plaintiff's revised calculations close the gap between the time of the jury's verdict and the entry of Final Judgment in this case and utilize the same method and interest rate submitted by the parties in their initial calculations.  (*Compare* Doc. # 218, at Ex. A; Doc. # 219, Ex. 1 *with* Doc. # 223).

that, based upon the agreement of the parties (and preserving Defendant's general objection to any award of prejudgment interest) Plaintiff is due a prejudgment interest award of $38,056.50.

**IV.     Conclusion**

After careful consideration of the evidence and applicable case law, the court finds that although Plaintiff is not due an award of front pay, he is due prejudgment interest in the amount of $38,056.50.  A separate Final Judgment will be entered.

**DONE** and **ORDERED** this ____2nd_____ day of August, 2006.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE